UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ACBEL POLYTECH, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FAIRCHILD SEMICONDUCTOR )<br>INTERNATIONAL, INC. and FAIRCHILD )<br>SEMICONDUCTOR CORP., )<br>)<br>Defendants. )<br>) | Civil Action No. 13-13046-DJC |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                                                September 12, 2014

### I. Introduction

Plaintiff, AcBel Polytech, Inc. ("AcBel"), both on its own behalf and as assignee of EMC Corp. ("EMC"), has filed this lawsuit against Defendants, Fairchild Semiconductor International, Inc. and Fairchild Semiconductor Corporation (collectively "Fairchild"), alleging various claims of negligence, breach of warranty, misrepresentation and unfair and deceptive trade practices in violation of Mass. Gen. L. c. 93A. D. 7. Fairchild has moved to dismiss this action. D. 17. Fairchild has also moved for expedited discovery in support of its motion to dismiss. D. 30. For the reasons stated below, the Court ALLOWS IN PART and DENIES IN PART the motion to dismiss, D. 17, and DENIES the motion for expedited discovery, D. 30.

### II. Standard of Review

#### A. Motion to Dismiss for Failure to State a Claim

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court will dismiss a pleading that fails "to

support the reasonable inference that the defendant is liable for the misconduct alleged." Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (internal quotation marks omitted). To state a plausible claim, a claim need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original). At bottom, a claim must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[i]n determining whether a [pleading] crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.' . . . This context-specific inquiry does not demand 'a high degree of factual specificity.'" Garcia-Catalan, 734 F.3d at 103 (internal citations omitted).

**B.** **Motion for Expedited Discovery**

Although the Federal Rules of Civil Procedure provide for discovery after the parties' Rule 26(f) conference, Fed. R. Civ. P. 26(d)(1), it is within the Court's discretion to allow expedited discovery. Id. (noting no party may seek discovery before the Rule 26(f) conference "except . . . when authorized . . . by court order"). In determining the reasonableness of such requests, courts in this district consider a variety of factors including "the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of

prematurity." Momenta Pharm., Inc. v. Teva Pharm. Indus. Ltd., 765 F. Supp. 2d 87, 89 (D. Mass. 2011) (quoting McMann v. Doe, 460 F. Supp. 2d 259, 265 (D. Mass. 2006)).

**III.    Factual Background**

This factual summary is based upon the allegations in the complaint. D. 7.

AcBel, a Taiwanese company with U.S. facilities in Hopkinton, Massachusetts, develops, manufactures and sells power management solutions for high-end computing products. D. 7 ¶ 1. One product that AcBel manufactures and distributes is the "Katrina 400W General Assembly" (the "PSU"), which supplies a consistent stream of power to certain high-end data storage devices, and when necessary, provides an uninterruptible supply of power in the event of a power failure. Id. ¶¶ 2, 31. One component of the PSU is the "Voltage Regulator," which Fairchild designed and manufactured. Id. ¶ 1. PSUs, in turn, were incorporated into large data storage devices manufactured by EMC. Id. ¶ 37.

Both Fairchild entities are incorporated in Delaware and have a principal place of business in California, but a major corporate office in South Portland, Maine. Id. ¶ 10. Fairchild is, however, registered to do business in Massachusetts and derives substantial revenue from in-state sales, having a sales office in Massachusetts. Id. ¶ 16.

The Voltage Regulators were a microcircuit component of the PSU. Id. ¶ 32. They maintain a consistent output of volts or electrical power to prevent power surges from damaging the larger electronic device. Id. ¶ 33. Typically, AcBel purchased Fairchild's Voltage Regulators via Fairchild's agent and distributor, Synnex Electronics Hong Kong Ltd. ("Synnex"), but AcBel negotiated the price it paid with Fairchild directly. Id. ¶ 34.

Sometime in 2008 or 2009, Fairchild redesigned the Voltage Regulators, shrinking the conducting component of the Voltage Regulators' computer chip. Id. ¶ 38. By January 2010,

Fairchild began shipping the redesigned Voltage Regulators to its customers, including AcBel. Id. ¶ 39. Fairchild did not notify AcBel that it had redesigned the product. Id. ¶ 40. In June 2010, one of Fairchild's customers noticed an unusually high rate of failure in connection with the redesigned Voltage Regulators. Id. ¶ 44. After running tests on the Voltage Regulators, Fairchild concluded that the modification made the component extremely vulnerable to the accumulation of humidity and water on the chip, which would then cause the chip to short circuit and the Voltage Regulator to fail. Id. ¶ 45. Shortly thereafter, in week thirty-five of 2010, Fairchild reverted back to its previous design. Id. ¶ 46.

Fairchild did not, however, disclose to AcBel that it had changed the design of the Voltage Regulators by reverting back to the old design or that the reason for the change was based on the discovery that the Voltage Regulators manufactured in the first thirty-four weeks of 2010 were defective. Id. ¶¶ 48, 51. By then, AcBel had purchased approximately 195,000 defective Voltage Regulators and many of AcBel's PSUs, which had already been deployed into the field, contained the defective Voltage Regulators. Id. ¶¶ 54, 55. Replacing the Voltage Regulators in the field is significantly more expensive than doing so while the PSUs are still in the production line. Id. ¶¶ 57, 58.

In December 2010, the PSUs in the field began failing at an "epidemic" rate. Id. ¶ 60. After AcBel and EMC identified the Voltage Regulators as the cause of the failure, a Fairchild employee admitted that the failure was likely the same as the one experienced by a prior customer and later admitted that the product had been redesigned for a second time to account for humidity susceptibility. Id. ¶¶ 62, 64, 65.

Following Fairchild's admission, AcBel was able to identify which PSUs were at risk, narrowing the number of vulnerable PSUs to 270,000. Id. ¶ 73. To identify customers with

4

PSUs that were at-risk, EMC traveled to the customer, physically removed the PSU from EMC's data storage devices and replaced it with a working PSU. Id. ¶¶ 75, 76. EMC would then ship the PSU to AcBel in either Hopkinton or Cork, Ireland to be fixed, where AcBel personnel would rework each PSU. Id. ¶ 77. Fairchild also shipped Voltage Regulators directly to AcBel in Massachusetts. Id. ¶ 79.

EMC has entered into an agreement with AcBel to resolve their dispute in connection with the PSU failures. Id. ¶ 80. In connection with this agreement, EMC assigned its claims against Fairchild to AcBel. Id. ¶ 81.

## IV. Procedural History

AcBel commenced this action on November 27, 2013, and amended its complaint on January 6, 2014. D. 1, 7. AcBel has asserted claims of breach of warranty on its own behalf and on EMC's (Counts I, II, XII and XIII); claims for fraud and negligent misrepresentation on its own behalf (Counts III, IV and V); claims of "design defect – implied warranty/strict liability" on its own behalf and on EMC's (Counts VI and XIV); claims of "design defect – negligence" on its own behalf and on EMC's (Counts VII and XV); claims of "failure to warn – implied warranty/strict liability" on its own behalf and on EMC's (Counts VIII and XVI); claims of "failure to warn – negligence" on its own behalf and on EMC's (Counts IX and XVII); claims of a violation of Mass. Gen. L. c. 93A on its own behalf and on EMC's (Counts X and XVIII); and claims for punitive damages on its own behalf and on EMC's (Counts XI and XIX). Fairchild has moved to dismiss the amended complaint. D. 17. Fairchild subsequently filed a motion for expedited discovery to rebut arguments advanced by AcBel in its opposition to the motion to dismiss. D. 30. The Court heard the parties on the pending motions on July 29, 2014 and took these matters under advisement. D. 39.

## V. Discussion

### A. <u>Fairchild's Motion to Dismiss</u>

*1. The Amended Complaint Sufficiently Alleges Privity*

Fairchild argues that the Court should dismiss Counts I, II, XII and XIII (and Counts IX and XVII to the extent these counts assert breach of warranty claims) because breach of warranty claims under Massachusetts law require privity of contract between the parties. D. 18 at 6. Indeed, "privity of contract is required in implied warranty claims regarding commercial transactions." Cruickshank v. Clean Seas Co., 346 B.R. 571, 580 (D. Mass. 2006) (quoting Irish Venture, Inc. v. Fleetguard, Inc., 270 F. Supp. 2d 84, 87 (D. Mass. 2003)).

AcBel does not dispute this principle as to its two traditional contract-based warranty claims (Counts I and II),[1] but argues that the complaint does establish privity. Here, the amended complaint alleges that AcBel negotiated the price of the Voltage Regulators directly with Fairchild, D. 7 ¶ 34, and that "Fairchild sold AcBel approximately 195,000 Voltage Regulators." Id. ¶ 85. Although Fairchild disputes this allegation, it is a sufficient allegation of privity and the Court must, at this stage, "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." McGunigle v. City of Quincy, 944 F. Supp. 2d 113, 118 (D. Mass. 2013).

Furthermore, AcBel alleges it purchased the "Voltage Regulators via Fairchild's agent and distributor, Synnex." D. 7 ¶ 34. Where a seller engages an agent to sell its products to a purchaser, this does not destroy privity between the purchaser and the seller for the purposes of a breach of warranty claim. White's Farm Dairy, Inc. v. De Laval Separator Co., 433 F.2d 63, 66

---

[1] The privity requirement likely only applies to "contract-based" warranty claims rather than "tort-based" warranty claims. Jacobs v. Yamaha Motor Corp., USA, 420 Mass. 323, 330 (1995) (noting that "[c]ontract-based warranty claims involving commercial transactions may generally call for different treatment than tort-based warranty claims").

6

(1st Cir. 1970) (noting that "[i]n Massachusetts it is well settled that lack of privity is an absolute defense to an action for breach of warranty," but concluding that there was sufficient privity between plaintiff and defendant where intermediary was acting as agent for defendant).

In White's Farm, the owner and operator of a dairy farm brought a breach of warranty action against the manufacturer of its milking equipment. 433 F.2d at 64. The district court directed a verdict for the manufacturer on the grounds that no privity of contract existed between the parties. Id. The First Circuit reversed, finding that a jury could have found privity even though the equipment contract was between the plaintiff-farm and a dealer for the defendants. Id. (noting that proof of agency is ordinarily a question of fact for the jury) (citations omitted). Accordingly, the First Circuit concluded that there was sufficient evidence for a jury to find that the dealer was acting as "a stand-in for [the defendant]," even if the defendant's dealer "was ordinarily an independent entity." Id. at 67. The plaintiff had no prior relationship with the dealer, who was brought in by the defendant, and the plaintiff "consistently denied that they knew that they were dealing with [the dealer] as an entity independent from [the defendant]." Id. at 66.

Here, as in White's Farm, AcBel has alleged substantial direct dealings between Fairchild and AcBel, including the negotiation of key terms such as price, and numerous phone calls, emails and presentations regarding the Voltage Regulator defect. D. 7 ¶¶ 34, 64-72. Furthermore, AcBel has alleged that Synnex was acting as Fairchild's agent and distributor. Id. ¶ 34; see also Mesta v. Allied Van Lines Int'l., Inc., 695 F. Supp. 63, 64 (D. Mass. 1988). Accordingly, AcBel has pled a plausible basis to sustain its breach of warranty claims.[2]

---

[2] In light of the Court's conclusion that AcBel's breach of warranty claims survive under Massachusetts law, the Court need not address AcBel's choice of law arguments that "it is

7

## 2. AcBel Has Stated Tort-Based Breach of Warranty Claims and Negligence Claims

Fairchild also argues that the Court should dismiss AcBel's "design defect" and "strict liability" claims because "there is no strict liability in tort apart from liability for breach of warranty under the Uniform Commercial Code." D. 18 at 7 (quoting Guzman v. MRM/Elgin, 409 Mass. 563, 569 (1991). Although this is true as a general matter, Fairchild's argument ignores the fact that the Supreme Judicial Court "has distinguished between contract-based and tort-based breach of warranty actions." Sharp v. Hylas Yachts, Inc., 962 F. Supp. 2d 361, 367 (D. Mass. 2013) (citing Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103 (1989)). Counts VI and XIV state tort-based breach of warranty claims in that they are based upon a "design defect." See, e.g., Johnson ex rel. Estate of Johnson v. Brown & Williamson Tobacco Corp., 345 F. Supp. 2d 16, 20 (D. Mass. 2004) (discussing design defect claims in context of both breach of warranty and negligence claims). Counts VIII and XVI, meanwhile, plead tort-based warranty claims under the "failure to warn" theory of liability. See, e.g., Alves v. Mazda Motor of Am., Inc., 448 F. Supp. 2d 285, 300 (D. Mass. 2006) (discussing elements of a breach of warranty claim on a failure to warn theory). Although AcBel does not specifically invoke the UCC in alleging its "strict liability" claims, an invocation of "strict liability" under Massachusetts law references warranty claims under the UCC. Cruickshank, 346 B.R. at 577-578. Accordingly, the Court concludes that AcBel has not pled these claims insufficiently.

## 3. The Court Will Allow AcBel's Failure to Warn Claims to Proceed

---

impossible, pre-discovery, to develop the necessary factual record" to determine whether the law of Massachusetts, Maine or Taiwan may apply to the action. D. 23 at 9.

Fairchild also contends that Counts VIII, IX, XVI and XVII, which allege "failure to warn" claims based upon theories of strict liability and negligence, fail because the amended complaint does not allege that the Voltage Regulators posed a risk of physical injury. D. 18 at 8. For this proposition, Fairchild relies upon a recent First Circuit case, which noted that "[g]enerally speaking, a manufacturer owes a duty to warn foreseeable users of the dangers inherent in the use of its products…Massachusetts law gives rise to a duty to warn only where there is some reason to suppose a warning is needed…[a]nd a warning is not needed unless there is some dangerous aspect of the product against which the warning might act to mitigate risk." Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014) (citations and internal quotation marks omitted). It is not clear, however, that the "dangerous aspect" discussed in Geshke must refer to, as Fairchild suggests, a physical danger to a person, particularly given the contours of Massachusetts law in this area. "A manufacturer's duty to warn purchasers and expected users of its product refers to latent dangers in the normal and intended use of the product." Maldonado v. Thomson Nat. Press Co., 16 Mass. App. Ct. 911, 912 (1983) (citations omitted). That is, "the manufacturer's superior knowledge as to the foreseeable dangers to one with less knowledge" can trigger a duty to warn. 37 Mass. Prac., Tort Law § 16.5 (3d ed.) (citing Fiorentino v. A. E. Staley Mfg. Co., 11 Mass. App. Ct. 428, 433 (1981)). Here, AcBel alleges that a duty to warn arose out of Fairchild's superior knowledge and out of an industry standard. D. 23 at 20. The Court, therefore, declines to dismiss AcBel's failure to warn count.[3]

4. *Economic Loss Doctrine Does Not Change Analysis as to AcBel's Negligence and Strict Liability Claims*

---

[3] For the same reasons as discussed above, the Court need not engage in AcBel's choice of law arguments as to this claim.

Fairchild asserts that the economic loss doctrine bars AcBel's recovery for its negligence strict liability claims and breach of warranty claims. D. 18 at 12. "Under Massachusetts . . . law, the economic loss doctrine provides that purely economic losses are not recoverable in negligence and strict liability actions in the absence of personal injury or damage to property other than the product itself." Sebago, Inc. v. Beazer East., Inc., 18 F. Supp. 2d 70, 89 (D. Mass. 1998).

Although Fairchild contends that any defects in the Voltage Regulators did not cause "damage to property other than the product itself," Sebago, 18 F. Supp. 2d at 89, in some Massachusetts cases, "where a component is necessarily attached to a structure and the alleged defect causes damage only to surrounding parts of that structure, the economic loss doctrine applies, . . . [t]hese courts reasoned that the finished product incorporates its individual components because what the plaintiff actually bargains for is the final product." Pro Con, Inc. v. J & B Drywall, Inc., No. 032063C, 2006 WL 392123, at *2-3 (Mass. Super. Jan. 31, 2006); see also Irish Venture, Inc. v. Fleetguard, Inc., 270 F. Supp. 2d 84, 86 (D. Mass. 2003) (applying "benefit of the bargain" test and denying the defendant's motion to dismiss claims arising out of defective oil filter where the "object" of plaintiff's bargain (the filter) damaged the engine, which was purchased under an entirely separate bargain); Sebago, 18 F. Supp. 2d at 92 (reviewing the case law and determining "that it is appropriate to define the relevant product from the 'purchaser's perspective'") (citation omitted). Where the component and the final product are manufactured by different entities, however, it cannot be said that the purchase of the component and the purchase of the final product by an end-user are necessarily part of the "same bargain." Here, AcBel bargained to purchase Voltage Regulators from Fairchild, D. 7 ¶¶ 1-2, 34, and, therefore, the relevant product from the purchaser's perspective is the Voltage Regulator.

Accordingly, the Court does not conclude that the application of this doctrine to the facts, as alleged, warrants dismissal of these claims on this ground.

### 5. *AcBel Has Plausibly Alleged a Chapter 93A Claim*

Fairchild argues two grounds for dismissing AcBel's c. 93A claim: first, that the acts alleged did not occur primarily and substantially in Massachusetts; and second, that EMC had no business relationship with AcBel.

#### i. AcBel Has Plausibly Alleged an Injury in Massachusetts

Under Massachusetts law:

> No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth.

Mass. Gen. L. c. 93A, § 11. There is no bright line test to determine whether actions occurred "primarily and substantially" in Massachusetts. Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc., No. 13-11302-NMG, 2014 WL 1203106, at *7 (D. Mass. Mar. 19, 2014) (quoting Clinton Hosp. Ass'n v. Corson Grp., Inc., 907 F.2d 1260, 1266 (1st Cir.1990)); see also Heraeus Kulzer LLC v. Omni Dental Supply, No. 12-11099-RGS, 2013 WL 3305284, at *7 (D. Mass. July 1, 2013) (denying motion for summary judgment on Section 11 where neither party is Massachusetts resident).

"Section 11 suggests an approach in which a judge should, after making findings of fact, and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 473 (2003). Courts in this district have followed Kuwati's approach in resolving the instant question. See, e.g., RGJ Associates, Inc. v. Stainsafe, Inc., 338 F. Supp. 2d 215, 233-234 (D.

11

Mass. 2004). As this presents a factual question, "a section eleven cause of action, attacked via a motion to dismiss, should survive a 'primarily and substantially' challenge so long as the complaint alleges that the plaintiff is located, and claims an injury, in Massachusetts." Back Bay Farm, LLC v. Collucio, 230 F. Supp. 2d 176, 188 (D. Mass. 2002) (citing Amcel Corp. v. Int'l Executive Sales, Inc., 170 F.3d 32, 36 (1st Cir. 1999) (noting that the plaintiff's location in Massachusetts and its claim of injury in Massachusetts raises a reasonable chance that the plaintiff would prevail on the "primarily and substantially" issue); see also Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 118 (D. Mass. 2003) (noting that "whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth must be made on the basis of factual findings") (citation and quotations omitted). "Defendant bears the underlying burden to show that the conduct did not occur primarily and substantially in Massachusetts." Pine Polly, Inc., 2014 WL 1203106, at * 7.

Here, AcBel has alleged that its U.S facilities are located in Hopkinton, Massachusetts. D. 7 ¶ 1. AcBel alleges various harms that it felt in Massachusetts, including, but not limited to, increased costs suffered in Massachusetts, id. ¶¶ 56-59, the expenditure of resources associated with EMC and AcBel's testing of PSUs in Massachusetts, id. ¶ 6, and the expenditure of labor at AcBel's Hopkinton facilities to individually rework affected PSUs, id. ¶¶ 76-78. Thus, on this record, the Court cannot say that AcBel has failed to allege an injury in Massachusetts.

> ii. AcBel Has Plausibly Alleged Claim Brought on EMC's Behalf that the Wrongful Conduct Arose in the Business Conduct

Fairchild contends that AcBel's c. 93A claim, to the extent that AcBel has asserted it on EMC's behalf, should be dismissed because AcBel has alleged no business relationship between Fairchild and EMC. D. 18 at 11. "It is well settled that chapter 93A claims for breach of

12

warranty can proceed in the absence of privity of contract." Standard Register Co. v. Bolton-Emerson, Inc., 38 Mass. App. Ct. 545, 551 (1995). Although Standard Register referred to the necessity of "more than a minor or insignificant business relationship," it limited its decision to fraud-based c. 93A claims. Id. Even requiring some business relationship between the plaintiff and defendant for a 93A claim, courts have focused on whether there was a "sufficient business nexus" between the parties. IDT Telecom, Inc. v. Voice Distributors, Inc., No. 072465, 2008 WL 1800102, at *3 (Mass. Super. Apr. 11, 2008). Other courts have required only that "the wrongful conduct arise in a business context." Law Offices of Jeffrey S. Glassman v. Palmisciano, 690 F. Supp. 2d 5, 19 (D. Mass. 2009) (acknowledging lack of privity requirement); Lantner v. Carson, 374 Mass. 606, 611 (1978) ("unfair or deceptive acts or practices in the conduct of any trade or commerce must be read to apply to those acts or practices which are perpetrated in a business context") (quotation and citation omitted).

AcBel's complaint contains both a fraud-based c. 93A theory of liability, D. 7 ¶ 249 (alleging that "Fairchild employed an unfair method or deceptive act or practice by concealing and failing to disclose a known defect in the design of the Voltage Regulators"), and a warranty-based c. 93A theory of liability, id. ¶ 251 (alleging that "Fairchild employed an unfair method or deceptive act or practice in the course of trade or commerce by selling the defective Voltage Regulators to AcBel in breach of its implied and express warranties"). Under either standard, however, AcBel has alleged sufficient facts to infer a "sufficient business nexus." IDT Telecom, Inc., 2008 WL 1800102, at *3.

Here, AcBel alleges that EMC purchased products with Fairchild's defective parts in it, which it incorporated into its own products and sold to customers. D. 7 ¶¶ 37, 55. AcBel also alleges, "upon information and belief," that Fairchild was aware that the Voltage Regulators

13

were purchased to be installed in a product designed for EMC. Id. ¶ 36. Furthermore, AcBel alleges that "Fairchild was also in frequent communication, both over the phone and by email, with…EMC personnel in Massachusetts in connection with the Voltage Regulators," id. ¶ 19, and that "EMC…informed Fairchild that they had investigated the high rate of failure and concluded that Fairchild's Voltage Regulators were the cause," id. ¶ 63. See also Standard Register, 38 Mass. App. Ct. at 551 (finding 93A liability where the defendants "took an active role in the dealings with [plaintiff]"). Accordingly, the Court will not dismiss AcBel's 93A claims brought on EMC's behalf.

### 6. *AcBel Plausibly Alleges Its Misrepresentation Claims*

#### i. The Court Will Not Dismiss AcBel's Fraud Claim

To assert a claim for fraudulent misrepresentation in Massachusetts, a plaintiff must allege that the defendant:

> [1] made a false representation of material fact [2] with knowledge of its falsity [3] for the purpose of inducing the plaintiff to act thereon, [4] and that the plaintiff reasonably relied upon the representation as true and acted upon it [5] to his damage.

Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir. 2009) (quotation and citation omitted) (quoting Russell v. Cooley Dickinson Hosp. Inc., 437 Mass. 443, 458 (2002)). While Fairchild argues that AcBel has not identified a false representation of fact, AcBel bases its fraud claim on the allegation that when Fairchild redesigned the Voltage Regulators, it did not change the part number as is customary in the industry. D. 7 ¶¶ 40, 49, 103, 104. As a result, AcBel alleges that it reasonably assumed that the part was the same, original part and that it detrimentally relied on Fairchild's misrepresentation "by incorporating Voltage Regulators containing the defect into its PSU's." Id. ¶ 110. Although both parties cite conflicting cases as to whether a part number can amount to an affirmative misrepresentation, Hodges v. Apple, Inc., No. 13-cv-01128-WHO, 2013 WL 6698762, at *5-7, (N.D. Cal. Dec. 19, 2013) (dismissing

claim where plaintiff alleged that failure to differentiate between two products by part-number was a misrepresentation); Bailey v. Skipperliner Indus., Inc., 278 F. Supp. 2d 945, 963 (N.D. Ind. 2003) (concluding that boat hull identification number could amount to a misrepresentation of fact concerning year of manufacture); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., No. CIV.A. 398CV1360M, 2001 WL 1172184, at *3-4 (N.D. Tex. Sept. 28, 2001) (noting under Texas law that use of GE part numbers and vendor codes could amount to an affirmative misrepresentation that products were genuine GE products), neither party cites to any case applying Massachusetts law on this issue, nor has the Court found any. AcBel's contention, however, is persuasive. Fairchild used part number 071-000-438 or 071-000-532 for the Voltage Regulators. D. 7 ¶ 30. Accordingly, AcBel contends that every time Fairchild sold a part bearing these numbers, it was making the representation that the product was in fact the same part. Assuming that AcBel can prove that it was industry custom to change a product's part number with each redesign, it may demonstrate falsity.

Fairchild also argues that even if the allegation that Voltage Regulators' part numbers were false representations is sufficient for pleading purposes, AcBel's fraud claim should still be dismissed because AcBel has not alleged with sufficient particularity that it justifiably relied on the part numbers to its detriment. D. 18 at 15. However, Rule 9(b)'s heightened pleading requirements do not apply to AcBel's claims of reliance. See Rodi v. S. N.E. Sch. Of Law, 389 F.3d 5, 15 (1st Cir. 2004) ("the specificity requirement extends only to the particulars of the allegedly misleading statement itself….The other elements of fraud, such as intent and knowledge, may be averred in general terms") (citations omitted); Powers v. Boston Cooper Corp., 926 F.2d 109, 111 (1st Cir. 1991) (Rule 9(b) requires "specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations")

(citation omitted); see also Payton v. Wells Fargo Bank, N.A., No. 12-11540-DJC, 2013 WL 782601, at *5 (D. Mass. Feb. 28, 2013).

Fairchild cites only three First Circuit cases to support its position that reliance must be pleaded with particularity. The first case, First Choice Armor & Equip., Inc. v. Toyobo Am., Inc., 717 F. Supp. 2d 156 (D. Mass. 2010), states only that "Fed.R.Civ.P. 9(b)…mandates that in all averments of fraud…the complaint must, at a minimum, specify the 'time, place, and content of the alleged false or fraudulent representations,'" and does not address application to the reliance elements. First Choice, 717 F. Supp. 2d at 161. Notably, the court in First Choice held that the plaintiff had pleaded its fraud claim with sufficient particularity without addressing the pleading standard for reliance. Id. at 161-162. In Damon v. Sun Co., Inc., 87 F.3d 1467 (1st Cir. 1996), also cited by Fairchild, the plaintiffs alleged common-law misrepresentation and violations of chapter 93A. Damon, 87 F.3d at 1470. As in First Choice, the First Circuit affirmed the judgment in favor of the plaintiffs without addressing Rule 9(b)'s heightened pleading requirements. Id. Finally, in Sebago, while the court states that it applies the Rule 9(b) particularity requirement to plaintiff's allegations of reliance, the court found that reliance was properly pleaded where the plaintiffs stated that they had "read [defendant's] brochure…and in reliance on the representations purchased and installed the defendant's [product]." 18 F. Supp. 2d at 86. Similarly, AcBel has alleged that "Fairchild did not follow the industry practice of notifying AcBel that…the chip had a new design, as is customary in the industry," D. 7 ¶ 40, that "Fairchild did not change the part number for the Voltage Regulators, as is customary in the industry," id. ¶ 41, and that as a result, AcBel reasonably assumed that the part was the same part and detrimentally relied "by incorporating Voltage Regulators containing the defect into its PSU's," id. ¶ 110.

16

Fairchild raises a separate argument as to Count IV, AcBel's fraudulent omission claim, contending that AcBel has not pled any basis supporting a duty to disclose. D. 18 at 16. Under Massachusetts law, a fraud claim predicated upon an omission must allege a duty to disclose and "there can be no actionable claim of fraud for failure to disclose in the absence of a duty to disclose." Royal Bus. Grp., Inc. v. Realist, Inc., 933 F.2d 1056, 1064 (1st Cir. 1991). Although a fiduciary relationship can establish a duty to disclose, it is not the only scenario giving rise to such a duty. First Choice, 717 F. Supp. at 162 (concluding that defendant's "position of 'superior knowledge' with respect to the plaintiff triggered a duty to disclose"); see also Stolzoff v. Waste Sys. Int'l, Inc., 58 Mass. App. Ct. 747, 763 (2003) (finding a duty to disclose arose when "there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or [] the nondisclosed fact is basic to, or goes to the essence of, the transaction"). AcBel has sufficiently alleged that Fairchild had superior knowledge regarding the Voltage Regulators; specifically, that the products had been redesigned and that this fact had not been disclosed to AcBel. D. 7 ¶¶ 3, 4, 38, 48. In addition, AcBel has sufficiently alleged that industry standards required Fairchild to notify AcBel of the redesign or, at minimum, change the part number to put AcBel on notice of a change. D. 7 ¶¶ 40, 41, 49, 50. Accordingly, at the pleading stage, the Court will not dismiss Count IV.

      ii.      AcBel Has Sufficiently Alleged Reliance As to its Negligent Misrepresentation Claim

As with the fraudulent misrepresentation claim, Fairchild argues that the Court should dismiss AcBel's negligent misrepresentation claim (Count V) because it fails to plead reliance with particularity. To assert a claim for negligent misrepresentation in Massachusetts, a plaintiff must allege that the defendant:

> (1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information.

Braunstein v. McCabe, 571 F.3d 108, 126 (1st Cir. 2009) (quoting Gossels v. Fleet Nat'l Bank, 453 Mass. 366, 902 (2009) (internal quotation marks omitted)). As there is a split in authority as to whether Fed R. Civ. P. 9(b), which requires plaintiffs to plead some claims with particularity, even applies to claims for negligent misrepresentation under Massachusetts law, see Gardner v. Simpson Financing Ltd. Partnership, No. 09-11806-FDS, 2012 WL 1109104, at *4 n.12 (D. Mass. Mar. 30, 2012) (concluding that "Rule 9(b) applies to claims of negligent misrepresentation where the core allegation is fraud, and likely does not apply where the core allegation is negligence"); see also Massachusetts Sch. of Law at Andover, Inc., 142 F.3d at 41, it remains, as discussed above, that the element of reliance has been sufficiently pled as to this claim as well. Payton, 2013 WL 782601, at *5 (citation omitted) (holding merely that "[e]ven assuming…that Rule 9(b) applied to [the plaintiff's] complaint under the principle that Rule 9(b) reaches 'claims where the core allegations effectively charge fraud'…the Rule does not require a plaintiff to plead reliance with particularity. Rather, 'the specificity requirement extends only to the particulars of the allegedly misleading statement itself'"); see also Rodi, 389 F.3d at 15. Accordingly, the Court will not dismiss AcBel's negligent misrepresentation claim.

### 7. *"Punitive Damages" Is Not a Cause of Action*

Fairchild finally argues that Counts XI and XIX should be dismissed because punitive damages are not permitted in Massachusetts unless authorized by statute. D. 18 at 17. Although AcBel posits that Maine law, which recognizes a wider application of punitive damages, should apply, D. 23 at 31-32, whichever law applies, punitive damages are a remedy and not a cause of

18

action. South Port Marine, LLC v. Gulf Oil Ltd. P'ship, 234 F.3d 58, 64 (1st Cir. 2000). Whichever state's laws apply to this dispute, there is no "claim" for punitive damages. Accordingly, the Court DISMISSES Counts XI and XIX.[4]

### B. Expedited Discovery Is Not Warranted

Fairchild urges the Court to designate two documents – an invoice and a purchase order – as discovery. D. 30. Fairchild argues that these documents, already in Fairchild's possession, bear directly on arguments raised by AcBel in its opposition to Fairchild's motion to dismiss. Id. at 1. Fairchild claims that the invoice memorializes the sale of the Voltage Regulators from Synnex to AcBel and that the purchase order from EMC to AcBel shows the travel of the PCUs. Id. at 2. Fairchild seeks to rely on these documents to show that Massachusetts law should apply and that there was no privity of contract between AcBel and Fairchild. Id.

As noted above, however, AcBel may establish in discovery that Synnex was merely acting as Fairchild's agent in the sale of the Voltage Regulators. If Fairchild engaged Synnex to sell the Voltage Regulators to AcBel, this would not destroy privity between AcBel and Fairchild for the purposes of a breach of warranty claim. White's Farm, 433 F.2d at 66. Accordingly, even assuming the authenticity of the invoice, AcBel has pled a plausible basis to sustain its breach of warranty claims and expedited discovery of the invoice is not required to determine the sufficiency of AcBel's claims. Likewise, in light of the Court's conclusions above, it is not necessary to address AcBel's choice of law arguments at this time and expedited discovery of the purchase order would be premature.

Furthermore, while these documents may ultimately have some bearing on the appropriate choice of law and on the issue of privity, the consideration of just two documents is

---

[4] AcBel is free to argue for punitive damages after a determination of liability.

inappropriate where, as here, there is likely to be "hundreds, if not thousands, of other documents (including but not limited to other invoices and purchase orders, emails, letters, and power-point presentations) that also bear on those mixed issues of law and fact." D. 31 at 4. Accordingly, the Court DENIES Fairchild's motion for expedited discovery, D. 30.

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS IN PART and DENIES IN PART Fairchild's motion to dismiss, D. 17, and DENIES Fairchild's motion for expedited discovery, D. 30.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
